IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AS CORP INC., EMILIJAN ASENTIC on behalf of themselves and those similarly situated and derivatively on behalf of COMPASS SPECIALTY INSURANCE RISK RETENTION GROUP, INC. <br>                 Plaintiffs, <br> v. <br><br> MGR EXPRESS INC.;COMPASS FUEL INC. COMPASS INSURANCE GROUP INC.;MGR FREIGHT SYSTEM INC.; BERANE INC.; COMPASS LEASE LLC; RD LOGISTICS INC.; COMPASS MANAGEMENT INC.; COMPASS FUNDING SOLUTIONS LLC; COMPASS HOLDING LLC; COMPASS EQUIPMENT FINANCE LLC; COMPASS AUTO LEASE LLC; COMPASS TRUCK SALES LLC; DANNY TRANS. INC.; COMPASS INSURANCE COMPANY; COMPASS REAL ESTATE HOLDING LLC; MGR EXPEDITED INC.; RD EXPEDITED INC.; MGR TRUCK SALE INC.; MGR LEASE LLC; MGR TRUCK REPAIR INC. WILLOWBROOK 2012 LLC; NAPLES013 LLC; MGR AUTO LEASE LLC; COMPASS TRUCK RENTAL AND LEASING LLC; COMPASS PAYMENT SERVICES LLC; PLAINFIELD 014 LLC F/K/A MGR 014 LLC; MGR TRUCK RENTAL LLC; MGR FINANCE LLC; COMPASS SPECIALTY INSURANCE RISK RETENTION GROUP INC.; WOLF VENTURES LLC; MGR MANAGEMENT 015 LLC; MGR FREIGHT LLC; MGR EXPEDITED 1 LLC; MGR IL PROPERTIES LLC; MGR IL PROPERTIES 2 LLC; COMPASS FINANCIAL HOLDING GROUP LLC; COMPASS CAPITAL MANAGEMENT GROUP LLC; ST. PETE 2016 LLC; MGR 017 LLC; MGR 016 LLC COMPASS LOGISTICS LLC; RD EXPRESS | Civil Case # 2020 cv 06233 |

1

|   |   |
|---|---|
| LLC; MGR TRANSPORTATION LLC | ) |
| MGR EXPRESS LLC; MGR EXPEDITED | ) |
| LLC; COMPASS LOGISTICS HOLDING | ) |
| LLC; BERANE LEASE INC.; | ) |
| SMARTBOARD LLC; COMPASS UNITED | ) |
| SOCCER CLUB LLC; MGR HOLDING LLC | ) |
| COMPASS ARENA LLC; INTERNATIONAL | ) |
| TRUCKING ASSOCIATION LLC; | ) |
| COMPASS MANAGEMENT LLC; CITADEL | ) |
| RISK MANAGEMENT INC.; CITADEL | ) |
| RISK SERVICES INC.; PILOT TRAVEL | ) |
| CENTERS D/B/A PILOT FLYING J; | ) |
| CAPTIVE PLANNING ASSOCIATES | ) |
| LLC; RADOJICA DOBRASINOVIC; | ) |
| RADOMIR DOBRASINOVIC; RADOVAN | ) |
| "ROY" DOBRASINOVIC; ANA | ) |
| ALEKSANDROVSKA; ARNOLD CURTIS; | ) |
| ANGELIA DEMKOVIC; DALIBORKA | ) |
| SAVOVIC; ARLEESIA MCDONALD; VLAD | ) |
| KOSTIK; JELENA DOBRASINOVIC; | ) |
| THOMAS MILOWSKI | ) |
|   | ) |
| Defendants | ) |

## (OPPOSITION STATUS UNKOWN - SERVICE PENDING) MOTION FOR CLASS CERTIFICATION, TO FILE AMENDED PLEADING, EXTEND TIME FOR SERVICE AND/OR FOR STAY

Plaintiffs AS CORP INC. and EMILIJAN ASENTIC through counsel SHAH LEGAL REPRESENTATION bring this motion against the defendants pursuant to Federal Rules of Civil of Procedure 1, 2, 3, 4(m), 5, 6, 15(a)(1)&(2), 23, as follows:

### INTRODUCTION & ABBREVIATED RELEVANT BACKGROUND

On December 16, 2019, Emilijan Asentic and AS Corp Inc. brought state court claims against Roy Dobrasinovic and nine (9) Compass entities in on-going litigation which is presently captioned *Asentic et. al. Radovan "Roy" Dobrasinovic et. al.*, 2019 CH 14458 in the Circuit Court of Cook County ("Cook County Litigation").

2

Originally the Cook County complaint included a cause of action pursuant to the Securities and Exchange Act and was also brought on behalf of the People of the State of Illinois, but in the course of that Cook County litigation, the People of the State of Illinois was dismissed without prejudice, the *ex parte* relief was denied, and Cook County defendants argued that the Circuit Court of Cook County lacked subject matter jurisdiction of certain causes of action including but not limited to the Cook County plaintiffs' Securities and Exchange and Racketeer Influenced Corrupt Organizations Act causes of action.

The Cook County plaintiffs voluntarily dismissed the Securities and Exchange Act cause of action without prejudice. The Cook County defendants have continuously alleged the Cook County plaintiffs have failed to plead sufficient factual information to sustain the causes of action pled in the Cook County litigation and contested the subject matter jurisdiction of the state court to adjudicate some of the federal claims alleged in the Cook County litigation.

In light of the subject matter jurisdiction arguments raised by the defendants in the Cook County litigation regarding the Securities Exchange ("SEA") and RICO Acts causes of action, timeliness, and learning additional factual information, the plaintiffs in the Northern District litigation filed the instant action on October 20, 2020 with additionally revealed factual information and defendants.

On December 4, 2020 the Cook County court granted the Cook County plaintiffs leave to file an amended pleading notwithstanding the Cook County court's rulings on earlier versions of the Cook County plaintiff's complaints. The

Cook County court has refused to designate any of its rulings final pursuant to Illinois Supreme Court Rule 304. Instead the Cook County plaintiff obtained leave to file a third amended pleading by December 22, 2020.

The Northern District of Illinois - this court - also on December 4, 2020, ordered the parties to generate a joint status report by February 15, 2021. This court also set an initial status hearing for February 18, 2021 at 9:00AM.

The Cook County plaintiffs filed a third amended complaint on December 22, 2020. The Cook County plaintiffs third amended complaint does not allege a SEA cause of action. According to the Cook County court's December 4, 2020 order, the Cook County defendants were to answer or otherwise plead in response to the Cook County plaintiff's third amended complaint by January 12, 2021. On January 12, 2021, the Cook County defendants filed a motion for sanctions which includes a copy of the Complaint in this case - the Northern District of Illinois litigation, a motion to strike, and motion for extension of time to answer or otherwise plead against the Cook County plaintiff's Third Amended Complaint. The Cook County defendants' motions have been noticed for hearing for January 20, 2021 at 10:00AM.

As of January 13, 2021, Plaintiffs have attempted to make inquiries for waiver of service pursuant to Section 2-213 of the Illinois code (to the extent in accordance with Federal Rule 4). Plaintiffs' inquiries have resulted in certain defendants' agents emailing and/or calling plaintiff's counsel about the filing of the Northern District Complaint. Plaintiffs have not contacted some of the individual

4

defendants yet, as it was unclear whether the Cook County defendants' attorney or Cook County defendants would seek to represent those individuals. To date, the Cook County defendants have alleged in their most recent correspondence that Federal Rule 5 would be inapplicable, and stated in reference to this litigation in their Cook County motion for sanctions and to strike, "[o]n January 8, 2021, counsel for Plaintiffs informed counsel for Defendants that Plaintiffs have filed a complaint that is virtually identical to the Second Amended Complaint in the United States District Court for the Northern District of Illinois, Eastern Division [- a] copy of the Federal Court Complaint] is attached . . . as Exhibit 12." The Cook County Defendants also stated in a footnote that as to this litigation, "Defendants have not yet been served in [the Northern District] case and reserve all rights and defenses therein." Plaintiff has not yet sent Section 2-213 documentation pursuant to Federal Rule 4 to any defendants in this litigation (the Northern District of Illinois litigation).

## FACTS

A detailed recitation of the facts in this case is included in the Amended Complaint filed on October 20, 2020. Plaintiffs Emilijan Asentic and AS Corp Inc. entrusted their most vital business operations with Roy Dobrasinovic and his Compass' entities self-proclaimed "One Stop Center" - the C1SC. In reality, Asentic's business fell into the clenches of Roy Dobrainsovic and his brothers *de facto* One Stop Center ("DB1SC") and the C1SC and DB1SC's affiliated entities. The C1SC and the DB1SC and their affiliated individuals and entities have

multiple, independent, and overlapping schemes of fraud, deceit, theft, embezzlement, extortion and other unlawful conduct.

As alleged in the Amended Complaint in this litigation, some of the schemes are addressed in both the context of the Racketeer Influenced Corrupt Organizations Act (Counts I - III) and the Securities Exchange Act (Count VI) causes of action. The class certification portion of this motion focuses upon the defendants listed in Count VI who have deceptively sold unregistered RRG shares, misrepresents that RRG shares may not be forfeited or cancelled after sale, conceals the fact that the Count VI defendants will forfeit and cancel RRG shareholders shares intentionally before three years elapse, conceals the market price of the RRG shares, conceals that the ownership and control of the RRG is to obtain monthly financial reports from shareholders which is then used by the RRG leadership to perpetrate other multi-level and multi-scoped schemes of fraud, extortion, and financial crime. The class certification portion of this motion focuses solely upon the SEA portion of the underlying facts and the Count VI defendants. The remainder of the motion is self explanatory.

## SECURITIES EXCHANGE ACT STANDARDS

The SEA codifies the need to regulate purchase, sale, exchange and transfers of securities due to the importance securities have upon the U.S. economy and the susceptibility of securities' pricing to manipulation and control, which adversely affects the integrity of U.S. securities and financial markets. The legislation enacting the SEA was passed to prevent the precipitation, intensification, or

prolongation of manipulated securities' pricing and corresponding market failures and national market emergencies that arise from manipulation of securities' pricing which carry the potential to create national and widespread unemployment, economic destruction, and burdens upon the national credit. At the time of its enactment, the SEA established that it is unlawful for any person, directly or indirectly, through use of the mails to use or employ any manipulative, deceptive device, or contrivance which contravened any rules or regulations of the Securities and Exchange Commission ("SEC") that were necessary or appropriate to protect investors and/or the public. Historically private parties implied a private cause of action pursuant to the SEA whereas to date, many private parties invoke the SEA through regulation 17 CFR § 240.10b-5. ("10b-5"). 10b-5 makes it unlawful for any person, directly or indirectly through the instrumentalities of interstate commerce or the mails (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact . . . (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person . . . in connection with the purchase or sale of any security." In addition to 10b-5 based relief, the SEA also states, "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the SEA] or of any rule or regulation [of the SEA] . . . shall be void. 15 U.S.C. § 78cc. Every contract made in violation of the SEA shall be void unless an enumerated exception applies. *Id*.

## DISCUSSION

I. **THIS COURT SHOULD CERTIFY 23(B)(2) & 23(B)(3) CLASSES AND SUBCLASSES AGAINST THE COUNT VI DEFENDANTS.**

A party moving to maintain all or part of an action as a class in federal court must demonstrate numerosity, commonality, typicality, and adequacy of representation, and the corresponding additional requirements of the specific Rule 23 subsection (b) numbered provision invoked by the respective class. 23(b)(2) certified classes may be maintained if the party opposing the class has acted or refused to act on grounds common that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the class. 23(b)(3) certified classes may be maintained if the court finds questions of law or fact common to the class members predominate questions affecting only individual members, and that a class action is a superior method for fairly and efficiently adjudication.

In this case, AS Corp acquired shares in Compass Specialty Insurance RRG ("CSI RRG") pursuant to the documentation attached to the Complaint. *See* Ex. D of Shah Declaration (Ex. 1 of Cmplt.) at Dkt.#4; PageID#448 - 457. The documentation includes a "Subscription Agreement" which has been issued in the same or substantially same form as to more than twenty (20) and potentially hundreds of RRG share purchasers, according to the CSI RRG defendants in state court litigation.

The Subscription Agreement omits any ability of the Count VI defendants or CSI RRG to cancel, forfeit, or take back shares from a RRG shareholder who paid funds for the RRG shares. The Subscription Agreement also by definition permits

8

the seller to repurchase shares for a three year period and/or longer at a price fixed at the time the CSI RRG shareholder first acquired its shares. The Subscription Agreement fails to disclose the option, the basis for the company's option to repurchase in this highly deceptive manner, and/or the registration of the Subscription Agreement as an option with the appropriate governing bodies. Instead in various portions of the Subscriptions Agreement, it states:

> **"[T]he Investor agrees that this Subscription Agreement and any agreement of the Investor made . . . is irrevocable, and that this Agreement shall survive . . . [t]ermination of the existence of the Investor . . .**
>
> **II.     CANCELLATION OF INSURANCE POLICY AND RIGHT OF REPURCHASE**
>
> **(A)     In the event that the Investor cancels its insurance coverage with the Company prior to three (3) years after inception, the Investor shall forfeit all of its Common Stock purchased hereunder and shall have no other rights to any capital of the Company.**
>
> **(B)     Provided that the Investor has maintained insurance coverage with the Company for at least (3) years, in the event the Investor thereafter terminates its insurance coverage with the Company, the Investor shall have the right to request that the Company repurchase all of its shares of Common Stock purchased hereunder, at a price equal to the Commitment set forth on the signature page hereto. The Company shall repurchase such shares of Common Stock at such price within sixty (60) days after the later to occur of: (i) three (3) years after the date of termination of coverage, and (ii) the date on which there are no longer any outstanding claims or reserves (including IBNR) related to Investor's insurance coverage by the Company."**

The Subscription Agreement's actual cancellation and forfeiture policy is intentionally omitted and included with other misleading clauses in order to induce CSI RRG shareholders into believing they cannot forfeit or lose their shares unless

the CSI RRG shareholder decides to procure insurance coverage from a non CSI RRG motor carrier insurance provider and terminate their insurance coverage through the CSI RRG before 3 years elapse from the time of purchasing CSI RRG shares and/or obtaining CSI RRG insurance coverage.

The Subscription Agreement also buries and fails to adequately disclose that the Subscription Agreements creates an unconscionable and highly unfavorable term in favor of the CSI RRG for the CSI RRG to repurchase shares for at least three years after the CSI RRG shareholder terminates coverage with the CSI RRG, and potentially much longer (based on an unknown claims and reserves calculation). The Subscription Agreement also fails to disclose whether the repurchase option is made pursuant to any registration or regulation with any state or federal governmental authority which regulates such options to repurchase shares.

The Count VI defendants participated directly and/or indirectly in the sales of the shares via the Subscription Agreement and CSI RRG sales documents and practices, and/or the operations of the CSI RRG by participating in the sale of the CSI RRG shares, operating the CSI RRG, providing coverage in cooperation with the CSI RRG, and/or similar direct, indirect, and/or aiding and abetting conduct.

The events, documentation, and parties described in connection with the CSI RRG's sales and operations including but not limited to the Subscription Agreement satisfy the numerosity, commonality, and typicality requirements by virtue of considering the uniformity of the Subscription Agreements and their alleged

unlawful omissions in violation of Rule 10b-5 and the voidness provision in the SEA. Counsel respectfully submits both the named plaintiffs and their counsel have unique knowledge and perspective and will dedicate all necessary resources as demonstrated by the velocity and intensity of litigation to date satisfying the adequacy of representation factor enumerated in subsection (a) of Rule 23.

Plaintiffs also respectfully submits that the Subscription Agreement's forfeiture and cancellation policy omission and repurchase option and related conduct are uniform and in alignment with subsection (b)(2) of Rule 23 as to all CSI RRG purchasers. Separate classes or subclasses of CSI RRG purchasers whose shares were forfeited and or repurchased could be established pursuant to subsection (b)(3) of Rule 23, as well, because the Subscription Agreement, the Count VI defendants' conduct, and the legal provisions of the SEA would predominate adjudication of any 23(b)(3) class members' SEA damages.

As pointed out in the pleadings, 23(b)(3) class treatment is also desirable in this case because many of the proposed class members are unlikely to be aware of their claims, unlikely to obtain counsel, and otherwise likely to benefit from the greater understanding of the Count VI defendants conduct acquired in this and the Cook County litigation. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D) (listing factors - including litigation already begun, desirability of concentrating litigation). The ability to rescind their Subscription Agreements, and/or obtain other damages will benefit class members. The court should certify classes pursuant to Rule 23(b)(2) and

11

23(b)(3) and/or subclasses as needed based on their purchase or acquisition of CSI RRG shares and/or forfeiture, cancellation, or "sale back" of the shares.

## II. THIS COURT SHOULD GIVE PLAINTIFFS LEAVE TO AMEND THEIR COMPLAINT AND EXTEND THE TIME TO MAKE SERVICE INDEFINITELY.

Federal Rule of Civil Procedure 15 permits a party to amend a pleading once without leave of court as long as the amendment occurs within the Rule 15(a)(1)window of time after service of process. FRCP 15(a)(2) permits parties to amend a pleading with the consent of litigation opponents or with leave of court. Rule 4(m) historically has permitted parties to make service without a specified time frame after the filing of a complaint. The federal rules later created a 120 day window for service from the date of filing before parties are required to seek additional time. Presently the window for service of process from filing is 90 days without additional time from the court.

In this case, but for a scrivener's error plaintiffs would not be required to seek leave of court to amend their complaint or to ask for additional time to make service. Nonetheless, because the case number provided by the Northern District was mistakenly omitted before filing the Northern District Complaint on October 20, 2020, and because, on that same day, plaintiffs within hours filed an amended complaint to include the case number assigned by the court, the plaintiffs now request leave to file an amended complaint. There are many reasons the plaintiffs seek to amend the complaint, but two of the most major reasons are that the Cook County defendants have alleged in the Cook County litigation that the Cook County

plaintiffs' presently pending pleading in Cook County should be stricken and that the Cook County plaintiffs should be sanctioned. The Cook County defendants' motions to strike and for sanctions rely upon their arguments that the Cook County court lacks subject matter jurisdiction over some of the federal law claims between the parties, which would necessitate those claims being adjudicated in this court.

In addition, because the filing of the amended complaint in this litigation would be most optimal after the Cook County court adjudicates the Cook County defendants' motion to strike and for sanctions, the plaintiffs' respectfully submit that the Court grant plaintiffs an unrestricted amount of time - as existed historically - to make service in light of the previously described circumstances, the voluminous number of defendants, and the geographic diversity of some of the plaintiffs (including certain defendants with legal counsel overseas).

### III. THIS COURT SHOULD STAY ALL NON-MOTION PROCEEDINGS AND DEADLINES IN THIS CASE PENDING RULING UPON THE COOK COUNTY DEFENDANTS' MOTION TO STRIKE AND FOR SANCTIONS IN THE COOK COUNTY LITIGATION.

Federal courts have inherent powers to stay proceedings in part, entirely, and as otherwise needed pursuant to applicable statutes, the federal civil rules, common law, and other legal authority. Federal courts have granted stays for purposes of permitting or stopping discovery, to delay enforcement of judgments pending appeal, by mutual request of parties, conflicted parallel proceedings, out of practical timeliness concerns connected to exhaustion of administrative remedies, and a variety of many other reasons. *See generally* Fed. R. Civ. P. 37 (stay of discovery in context of sanctions), Fed. R. Civ. P. 62 (stay in context of enforcement of judgment).

In this case, the Cook County defendants have noted and acknowledged the commencement of this litigation, and are attempting to strike the Cook County plaintiffs pleadings in that case, obtain sanctions, and obtain an extension of time for the Cook County defendants to answer or otherwise pleading in response to the Cook County pleading after adjudication of their motion to strike and for sanctions. The Cook County defendants motions and positions in the Cook County litigation depend largely upon their earlier arguments that the Cook County court lacks subject matter jurisdiction over certain federal claims.

Plaintiffs respectfully submit adjudication of the Cook County defendants' motions for sanctions, to strike, and for extension of time have the potential to affect this litigation, and a temporary stay of all non motion proceedings and deadlines until the Cook County court rules on the motions with the potential for such stay to be extended is a reasonable proposed course of action.

Similarly, the Northern District plaintiffs have been in preliminary talks with the non-individual defendants' agents and/or attorneys, including but not limited to the Cook County defendants' attorneys who represent some of the Northern District defendants as defendants in the Cook County litigation.

The Court should exercise its inherent powers to stay the status, joint status report, and other non-motion proceedings and deadlines in this case pending the Cook County court's adjudication of the Cook County defendants motions to strike, for sanctions, and for extension of time which are set for hearing on January 21, 2021, and as otherwise needed.

WHEREFORE, Plaintiffs, respectfully seek the following relief:

A. Certification of a proposed class of all CSI RRG shareholders pursuant to Rule 23(b)(2) declaring their share purchase documents void pursuant to the SEA, and given relief including but not limited to the option to rescind their share purchase documentations, and obtain all other necessary and corresponding just and appropriate relief;

B. Certification of a proposed class of all CSI RRG shareholders pursuant to Rule 23(b)(3) including if needed subclasses whose shares were forfeited, cancelled, sold back to, or reacquired by CSI RRG or any Count VI defendant or related entities and awarded damages and all other relief permitted including but not limited to punitive, compensatory and other damages permitted under the SEA;

C. Enjoining the Count VI defendants from any further violations of the SEA

D. Ordering an accounting and identification of all CSI RRG shareholders with name, address, telephone number, email address, and relevant preservation of all records directly or indirectly related to such CSI RRG shareholders;

E. Ordering that all CSI RRG records be preserved;

F. Ordering Plaintiffs have leave to file an amended pleading;

G. Ordering Plaintiffs have an indefinite extension of time to serve process including but not limited to service pursuant to Section 2-213 of the Illinois Code, and/or any other method permitted in Federal Rule 4 or related rules;

H. Staying all non-motion proceedings and deadlines;

I. Ordering all other relief deemed necessary and just.

Dated: January 14, 2021.

Ankur Shah
SHAH LEGAL REPRESENTATION
333 South Wabash Ave., Suite 2700
Chicago, IL 60604
T: (312) 612 - 9221
Cook County ID: 59669

Respectfully submitted,

AS CORP INC. and EMILIJAN ASENTIC

/s/ Ankur Shah
_____

**CERTIFICATE OF SERVICE**

I certify that as of the 14th day of January, 2021, after receiving calls and e-mails from certain registered agents of certain non individual defendants in this case, and from the Cook County defendants' attorney Richard Wolf, that certain non individual defendants are aware of this lawsuit.

I certify that on the 14th day of January, 2021 I filed a copy of this motion with the Northern District of Illinois pursuant to CM/ECF which will automatically send a copy of the motion to all registered users who have appeared, and that I will inform the Cook County defendants' attorney Richard Z. Wolf of this motion via e-mail, and also attempt to continue efforts involving Section 2-213 service of process and inform those who I am able to contact about this motion, and offer to provide them with a copy of this motion free of charge via e-mail.

I make the following certification under penalties of perjury and Section 1-109 of the Illinois Code of Civil Procedure and corresponding federal law.

Dated: January 14, 2021

/s/ Ankur Shah

Ankur Shah

*Attorney for the Plaintiffs*