**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AS CORP INC., EMILIJAN ASENTIC on behalf of themselves and those similarly situated and derivatively on behalf of COMPASS SPECIALTY INSURANCE RISK RETENTION GROUP, INC. | ) ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | |
| MGR EXPRESS INC., COMPASS FUEL INC., COMPASS INSURANCE GROUP INC., MGR FREIGHT SYSTEM INC., BERANE INC., COMPASS LEASE LLC, RD LOGISTICS INC., COMPASS MANAGEMENT INC., COMPASS FUNDING SOLUTIONS LLC, COMPASS HOLDING LLC, COMPASS EQUIPMENT FINANCE LLC, COMPASS AUTO LEASE LLC, COMPASS TRUCK SALES LLC, DANNY TRANS. INC., COMPASS INSURANCE COMPANY, COMPASS REAL ESTATE HOLDING LLC, MGR EXPEDITED INC., RD EXPEDITED INC., MGR TRUCK SALE INC., MGR LEASE LLC, MGR TRUCK REPAIR INC., WILLOWBROOK 2012 LLC, NAPLES013 LLC, MGR AUTO LEASE LLC, COMPASS TRUCK RENTAL AND LEASING LLC, COMPASS PAYMENT SERVICES LLC, PLAINFIELD 014 LLC F/K/A MGR 014 LLC, MGR TRUCK RENTAL LLC, MGR FINANCE LLC, COMPASS SPECIALTY INSURANCE RISK RETENTION GROUP INC., WOLF VENTURES LLC, MGR MANAGEMENT 015 LLC, MGR FREIGHT LLC, MGR EXPEDITED 1 LLC, MGR IL PROPERTIES LLC, MGR IL PROPERTIES 2 LLC, COMPASS FINANCIAL HOLDING GROUP LLC, COMPASS CAPITAL MANAGEMENT GROUP LLC, ST. PETE | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Case No. 20 CV 06233<br><br>The Honorable Judge Virginia M. Kendall<br><br>The Honorable Magistrate Judge M. David Weisman |

1

```
2016 LLC, MGR 017 LLC, MGR 016 LLC,    )
COMPASS LOGISTICS LLC, RD EXPRESS )
LLC, MGR TRANSPORTATION LLC, )
MGR EXPRESS LLC, MGR EXPEDITED    )
LLC, COMPASS LOGISTICS HOLDING    )
LLC, BERANE LEASE INC.            )
SMARTBOARD LLC, COMPASS UNITED    )
SOCCER CLUB LLC, MGR HOLDING LLC, )
COMPASS ARENA LLC, INTERNATIONAL )
TRUCKING ASSOCIATION LLC,         )
COMPASS MANAGEMENT LLC,           )
LA LINES INC., RDS FUNDING LLC,   )
RDS FINANCIAL SERVICE INC.,       )
CITADEL RISK MANAGEMENT INC.,     )
CITADEL RISK SERVICES INC., PILOT )
TRAVEL CENTERS D/B/A PILOT        )
FLYING J, CAPTIVE PLANNING        )
ASSOCIATES LLC, RADOJICA          )
DOBRASINOVIC, RADOMIR             )
DOBRASINOVIC, RADOVAN             )
"ROY" DOBRASINOVIC,               )
ANA ALEKSANDROVSKA, ARNOLD        )
CURTIS, ANGELIA DEMKOVIC,         )
 DALIBORKA SAVOVIC, ARLEESIA      )
MCDONALD, VLAD KOSTIK, JELENA     )
DOBRASINOVIC, THOMAS E. MILOWSKI, )
```

## FIRST AMENDED COMPLAINT

Plaintiffs AS CORP INC. and EMILIJAN ASENTIC through counsel SHAH

LEGAL REPRESENTATION brings this First Amended Complaint, as follows:

1. Federal courts have jurisdiction and may properly exercise jurisdiction here

    pursuant to 28 U.S.C. § 1331 and/or 28 U.S.C. § 1367, as federal and state laws

    permit private parties to bring suit against other parties in the Northern

    District of Illinois pursuant to federal laws and state law.

2. The Defendants listed are subject to the jurisdiction and venue in the Northern

    District of Illinois as many of the Defendants reside in Illinois, are owned or

2

operated by individuals who reside or transact business in Illinois, transact business in Illinois, are located in Illinois, have offices in Illinois, or that have committed or aided and abetted tortious acts in Illinois.

3. Roy Dobrasinovic's Compass "One Stop Center" companies and other companies owned and operated, owned, or otherwise controlled by Roy Dobrasinovic includes but is not limited to Compass Freight System Inc., Compass Tractor Repair Inc., Compass Express Inc.,Compass Express Line Inc., Compass Transportation Group Inc., Compass Financial Group Inc., Compass Freight Lines Inc., Compass Truck Driving School Inc., Compass Fuel Inc., Compass Equipment Inc., Compass Insurance Group Inc., Compass Lease LLC, Compass Management Inc., Compass Funding Solutions LLC, Compass Truck Sales LLC, Compass Holding LLC, Compass Equipment Finance LLC, Compass Insurance Company, Compass Auto Lease LLC, Compass Tire Service LLC, Willowbrook 2012 LLC, Compass Truck Rental and Leasing LLC, Compass Payment Services LLC, Compass Specialty Insurance Risk Retention Group Inc., Wolf Ventures LLC, Compass Financial Holding Group LLC, Compass Capital Management Group LLC, St. Pete 2016 LLC, Compass Logistics LLC, International Trucking Association LLC, Compass Management LLC, Smartboard LLC, Compass Logistics Holding LLC, Compass United Soccer Club LLC, Compass Arena LLC ("Roy Dobrasinovic Companies").

4. Roy Dobrasinovic operates his companies in conjunction with, in proximity to, and in parallel to his brothers and brothers companies, including but not limited to his brothers Radomir Dobrasinovic and Radojica Dobrasinovic.

5. Upon information and belief, Roy Dobrasinovic and his US based brothers also operate their companies in conjunction with, in proximity to, and in parallel to his brothers and brothers companies overseas, including but not limited to Bato Dobrasinovic.

6. Radomir Dobrasinovic's companies includes but is not limited to MGR Transportation Inc., MGR Express Inc., MGR Freight System Inc., RD Logistics Inc., MGR Expedited Inc., RD Expedited Inc., MGR Truck Sale Inc., MGR Lease LLC, MGR Truck Repair Inc., Naples013 LLC, MGR Auto Lease LLC, Plainfield 014 LLC f/k/a MGR 014 LLC, MGR Truck Rental LLC, MGR Finance LLC, MGR Management 015 LLC, MGR Freight LLC, MGR Expedited 1 LLC, MGR IL Properties LLC, MGR IL Properties 2 LLC, MGR 017 LLC, MGR 016 LLC, RD Express LLC, MGR Transportation LLC, MGR Express LLC, MGR Expedited LLC, MGR Holding LLC, RDS Funding LLC, RDS Financial Service Inc., LA Lines Inc. and others ("Radomir Dobrasinovic Companies").

7. Ray Dobrasinovic's companies includes but is not limited to Berane Inc., Danny Trans Inc., and Berane Lease Inc. ("Radojica Dobrasinovic Companies").

8. Roy Dobrasinovic also employs, has employed, and operates his companies in conjunction with others, including but not limited to other family members, such family members companies, and friends and business associates, which includes

4

but is not limited to Radojica Dobrasinovic, Radomir Dobrasinovic, Ana Aleksandrovska, Arnold Curtis, Angelia Demkovic, Daliborka Savovic, Arleesia McDonald, Vlad Kostik, Jelena Dobrasinovic, Thomas E. Milowski and others. ("Compass Affiliated Individuals").

9. Roy Dobrasinovic approached Emilijan Asentic at the Stefan Grill in order to acquire Emilijan Asentic and AS Corp Inc. as customers for Roy Dobrasinovic's Compass companies "One Stop Center" suite of service offerings where such offerings includes but is not limited to fuel card, factoring, equipment finance, insurance, driver training, and other related services.

10. On or around the Fall of 2016, the principal of AS Corp Inc. was at the Stefan Grill with a friend.

11. At the Stefan Grill, Radovan "Roy" Dobrasinovic approached AS Corp Inc.'s principal.

12. At the Stefan Grill and/or after approaching AS Corp Inc.'s principal, Radovan "Roy" Dobrasinovic informed AS Corp Inc.'s principal that Radovan "Roy" Dobrasinovic's companies offered services including but not limited to fuel card, motor carrier insurance, insurance agent, equipment sale, lease, and/or financing, driver training, networking, social events, factoring and collections, and other services.

13. Radovan "Roy" Dobrasinovic represents his companies' offerings as a "One Stop Center" where One Stop Center customers can obtain all or some of their most

motor carrier needs through one set of Compass and Compass affiliated companies.

14. At some point in time after their initial meeting, Radovan "Roy" Dobrasinovic also invited AS Corp Inc.'s principal to a social and/or sporting event(s) where Radovan "Roy" Dobrasinovic obtained tickets for AS Corp Inc.'s principal and AS Corp Inc.'s guest to attend the event.

15. At some point in time after their initial meeting, Radovan "Roy" Dobrasinovic, AS Corp Inc.'s principal, and Dushan Korokoski, and/or others attended the social and/or sporting event.

16. AS Corp Inc.'s business had began with a single truck and driver in 2012, and had grown to around thirty five ("35") trucks, thirty five to forty drivers, and continuous growth year over year up until fall of 2016.

17. AS Corp Inc. had continuously grown from its inception up until the time Radovan "Roy" Dobrasinovic and the Compass Defendants pursued Asentic and AS Corp Inc.

18. Radovan "Roy" Dobrasinovic's invitation and initial communications to AS Corp Inc.'s principal were to form as many business relationships with AS Corp Inc. as possible, and at one point Radovan "Roy" Dobrasinovic invited AS Corp Inc.'s principal to Radovan "Roy" Dobrasinovic's offices.

19. Radovan "Roy" Dobrasinovic and the Compass companies offer their services in an interconnected manner where benefits and discounts for certain Compass products and service offerings are linked to potential Compass One Stop Center

6

customers utilizing or becoming customers of Compass other One Stop Center products and services.

20. In the course of their relationship, Radovan "Roy" Dobrasinovic and the Compass companies offered to provide motor carrier insurance to AS Corp Inc. at around $220,000 to $230,000 per year linked to AS Corp Inc. utilizing the Compass One Stop Center's other offerings including but not limited to fuel card and/or factoring and collections, driver training, and eventually equipment sales, lease, and/or financing.

21. At some point in time after their initial meeting, Radovan "Roy" Dobrasinovic also invited AS Corp Inc.'s principal to a social and/or sporting event(s) where Radovan "Roy" Dobrasinovic obtained tickets for AS Corp Inc.'s principal and AS Corp Inc.'s guest to attend the event.

22. At some point in time after their initial meeting, Radovan "Roy" Dobrasinovic, AS Corp Inc.'s principal, and Dushan Korokoski, and/or others attended the social and/or sporting event.

23. Radovan "Roy" Dobrasinovic's and Compass' invitation and initial communications to AS Corp Inc.'s principal were to form as many business relationships with AS Corp Inc. as possible.

24. From the fall of 2016 until early 2017, Radovan "Roy" Dobrasinovic and Compass entities and individuals "on boarded" AS Corp Inc. and Emilijan Asentic into the Compass One Stop Center by providing Asentic documentation labeled and referenced as "Applications" for services including but not limited to

fuel card, motor carrier insurance, equipment finance, insurance agent services, driver training, and with offers for truck purchase and Compass' other services.

25. Asentic and AS Corp Inc. declined truck purchase services from Radovan "Roy" Dobrasinovic and the Compass entities, as AS Corp Inc. purchased trucks from third parties.

26. Radovan "Roy" Dobrasinovic and the Compass entities then offered Asentic and AS Corp Inc. truck financing services.

27. Asentic submitted significant amounts of information in documentation represented as "Applications" to the Compass One Stop Center about his own personal financial situation and personal identifying information to obtain a Compass Equipment Finance loan.

28. AS Corp Inc. also submitted significant amounts of information in documentation represented as "Applications" to the Compass One Stop Center including corporate history and origins, financial information, truck fleet information and details, insurance history, capitalization, fleet size, driver names and information, and other related confidential and sensitive business information.

29. Radovan "Roy" Dobrasinovic and the Compass entities had multiple individuals and entities "on board" Asentic and AS Corp Inc. into the Compass One Stop Center, including activities to get AS Corp Inc. accounts into Compass' online portals for services including but not limited to fuel card, insurance, factoring

8

and collections, equipment finance and/or all other services for which Compass provides online portals.

30. Radovan "Roy" Dobrasinovic and the Compass entities used their services, products, One Stop Center, customer applications and online portals and positions of trust and authority to collect information and knowledge about the precise and real time nature of AS Corp Inc.'s and Emilijan Asentic's clients, fuel expenditures, receivables, volume and nature of work, financials, and other confidential and sensitive business information in their business operations involving their customers.

31. Radovan "Roy" Dobrasinovic and the Compass entities represented, acted, and were only able to acquire such information and knowledge about AS Corp Inc.'s customers' business due to Radovan "Roy" Dobrasinovic and the Compass' entities representations that such information and knowledge about the customers would only be used exclusively for AS Corp Inc.'s and Emilijan Asentic's benefit and to help grow AS Corp Inc. and Asentic's business.

32. In the fall and winter of 2016 and early 2017, as AS Corp Inc. and Asentic were being brought into Radovan "Roy" Dobrasinovic's companies services and the Compass One Stop Center, Compass Funding Solutions, Compass Payment Services, Compass Equipment Finance, International Trucking Association, and other Compass entities and employees began taking actions on behalf of Asentic and AS Corp Inc. to transfer AS Corp Inc.'s accounts receivable factoring from Great Plains Transportation to Compass Funding Solutions for amounts in

excess of $183,000.00, to get rid of liens and clear any existing obligations on AS Corp Inc.'s receivables, to establish fuel card for AS Corp Inc.'s fleet, to provide equipment financing loans to AS Corp Inc. and Asentic, to provide AS Corp Inc. with motor carrier insurance, to provide AS Corp Inc. with "driver training" and International Trucking Association membership, and to establish twenty four seven and real time online access to AS Corp Inc.'s and Asentic's accounts online.

33. In the fall and winter of 2016 and early 2017, as AS Corp Inc. and Asentic were being brought into Radovan "Roy" Dobrasinovic's companies services and the Compass One Stop Center which involved applications and requests from AS Corp Inc. and Asentic to provide bank statements, IRS paperwork, insurance certificates and history, MC#, Tax ID, licensure, to sign share subscription agreements for motor carrier insurance, to review proposal letters for motor carrier insurance, and other confidential and sensitive business information and paperwork.

34. On October 20, 2016, AS Corp purchased $63,750.00 worth of shares from Compass Specialty Insurance Risk Retention Group at $1.00 per share for 63,750 shares.

35. Compass Specialty Insurance RRG provides and offers insurance by requiring customers to report their gross monthly receipts, estimates, and the degree of difference between the estimates and the actual gross monthly receipts.

36. More specifically, CSI RRG takes "Adjusted Gross Receipts" deducts "Fuel Surcharge 17.00%" resulting in the "Premium Base." The "Liability Rate %" (or

4.75% which was the rate for AS Corp Inc.) is multiplied by the Premium Base for that month to calculate the monthly premium amount which the customer is then required to pay.

37. Radovan "Roy" Dobrasinovic and the Compass entities method of providing and calculating monthly insurance premiums requires counterparties to disclose their clients and income in full to the One Stop Center.

38. Radovan "Roy" Dobrasinovic and the Compass entities including but not limited to Compass Payment Services and Compass Funding Solutions and others provided fuel card services in conjunction with Pilot Flying J and/or others through a "Compass" branded fuel card and periodic statements.

39. The first fuel card statement itemized and included greater levels of detailed information than later fuel card statements and Radovan "Roy" Dobrasinovic and the Compass entities' fuel card services were offered as a form of "revolving credit."

40. The fuel card statements show that per transaction fees were in excess of $.25 per transaction for transactions made on the fuel card and for "Comcheck" transactions.

41. Illinois law caps per transaction fees for unlicensed revolving credit providers to $.25 per transaction.

42. Upon information and belief, Radovan "Roy" Dobrasinovic and the Compass entities are unlicensed to provide revolving credit and therefore cannot legally charge in excess of $.25 per transaction.

43. From Fall 2016 until Spring of 2017, AS Corp Inc.'s balance on the fuel card fluctuated, and at times was around one month to one and a half months of AS Corp Inc.'s monthly fuel usage where AS Corp Inc.'s fleet used roughly $50,000.00 of fuel per week.

44. In late April and early May of 2017, Radovan "Roy" Dobrasinovic, Compass Payment Services, Compass Funding Solutions, and/or other Compass entities arbitrarily declared that AS Corp Inc.'s fuel card balance was "too high" and would require a "Payment Plan and Stay of Litigation" ("PPSL") paperwork to be executed by Asentic and AS Corp Inc.

45. The PPSL paperwork presented to Asentic and AS Corp Inc. was provided in multiple versions each more aggressive than the last from late April of 2017 until May of 2017.

46. PPSL paperwork from May 1, 2017 super prioritized Compass' alleged claims for payment against AS Corp Inc.'s receivables, represented that AS Corp Inc.'s fuel card balance up until the date of the PPSL would be segregated, that the segregated PPSL balance would be transferred to Compass Funding Solutions, that AS Corp Inc. would be required to pay $15,000.00 per week on the segregated PPSL balance, and that 1.5% interest would be charged on the PPSL balance every week.

47. On or around May 2, 2017, one day after the PPSL paperwork was signed based on representations by Compass of threatened litigation against Asentic and AS Corp Inc. and an alleged agreement to "stay litigation" against Asentic and AS

Corp Inc., Asentic documented a $50,000.00 payment against the PPSL balance in order to clear the alleged balance as quickly as possible.

48. Dobrasinovic, Arleesia McDonald, Vlad Kostik and the Compass entities and other Compass individuals arranged and coerced AS Corp Inc. and Asentic into regular and weekly deductions and payments including payment extracted from AS Corp Inc.'s receivables controlled by Compass' factoring and collections in order to pay the PPSL and fuel card balances Compass generated, which included $15,000.00 per week deductions plus additional sums for "interest" added onto the $15,000.00 sums.

49. Compass Funding Solutions PPSL and "fuel card" deductions from AS Corp Inc.'s receivables, factoring, and collections accounts were labeled Accounts#6005 (post PPSL fuel card) and #6006 (PPSL balance).

50. Compass' creation of various account numbers was used to create the false impression that such accounts were distinct and separate and that the PPSL balance was separated from AS Corp Inc.'s post PPSL fuel card charges.

51. In July of 2017 certain of AS Corp Inc.'s customers noted Compass' predatory behavior based upon its affect on AS Corp Inc.'s relationship with its customers.

52. In July of 2017 Asentic and AS Corp Inc. also began to inquire into purported equipment loan balances and alleged late fees and delinquincies despite Asentic and AS Corp Inc. making multiple payments to bring such loans current and fully paid.

53. In August of 2017, Compass Equipment Finance and Compass Insurance exerted pressure upon Asentic and AS Corp Inc. to permit Compass Funding Solutions to take weekly deductions from AS Corp Inc.'s receivables to satisfy alleged balances owed to Compass Equipment Finance and Compass Insurance which totaled an additional $8,000.00 per week with $3,000.00 weekly going to Compass Equipment Finance and $5,000 weekly going to Compass Insurance.

54. Asentic and AS Corp relying on Compass' representations that AS Corp's accounts were behind led Asentic and AS Corp to believe that the aggressive arrangement could clear AS Corp's balances.

55. On September 7, 2017 Compass' main fuel card contact represented that AS Corp's Account Number for the "PPSL" balance was paid in full.

56. On September 25, 2017, Asentic discovered that his credit was being destroyed by Compass despite Compass Funding Solutions deducting a total of $8,000 weekly for the benefit of CEF and CSI RRG.

57. Asentic pleaded with Compass' senior leadership including Thomas Milowski to have the unjustified negative credit reporting removed.

58. In November of 2017, Compass Equipment Finance quoted Asentic pay off amounts including all alleged fees, principal and interest for two loans with numbers 7730 and 7772, and Asentic and AS Corp Inc. arranged for $3,000 to be applied to loan 7730 to paid off in full and to pay off a portion of loan 7772.

59. In December of 2017, Asentic complained to Compass again that Compass had destroyed his credit and that his credit score had dropped around 200 points due

to Compass' negative credit reporting despite Asentic and AS Corp Inc. having paid off the equipment loans and alleged PPSL balance and other alleged Compass balances by that time.

60. In communications with Compass on or around December 2017, no additional late charges had been mentioned.

61. In January of 2018, Compass informed Asentic with one-day notice that his fuel card account would no longer have a credit line and AS Corp Inc. would be required to prepay for all fuel.

62. Compass indicated AS Corp Inc.'s fuel card account balance was "too high" at around $218,000 (a roughly one month balance for AS Corp Inc.'s average fuel usage), that it would need to be paid off in 90 days, and would require an immediate sizeable payment within one day.

63. Compass also stated it would hold all AS Corp Inc.'s titles from the Compass Equipment Finance loans as collateral for the fuel card balance.

64. Compass sent AS Corp Inc. a spreadsheet of AS Corp Inc.'s alleged fuel card account balance, payment, and credit history with Compass Payment Services.

65. The spreadsheet sent to AS Corp Inc. showed that the alleged segregated PPSL balance was not zeroed out and transferred to Compass Funding Solutions from Compass Payment Services, but was continuously accounted for in Compass' actions throughout and into the January of 2018 "Pre Payment Announcement."

66. In response to Compass' Pre Payment Announcement, Asentic indicated forcing AS Corp Inc. to pre pay for fuel in such an abrupt manner would cause his

trucks to stop, that he had a family emergency which he had discussed with Dobrasinovic (re: Asentic's father), and that due to cash flow issues Compass' demands would lead AS Corp to struggle and fail.

67. Asentic stated also that interest and additional charges would make Compass' demand unbearable during a time of personal and family crisis involving his father.

68. In response, Compass stated it would have its Legal team headed by Defendant Arleesia McDonald draft up a document to convert AS Corp's outstanding balance into a loan, and demanded that AS Corp begin factoring all of its incoming receivables through Compass Funding Solutions headed by Vlad Kostik (targeting AS Corp's receivables from its biggest customer - Risinger).

69. Compass attempted to obtain complete control over all of AS Corp's incoming cash flow and receivables from all of AS Corp's Inc.'s customers so that Compass could extract exact data and information for all amounts invoiced by AS Corp to all of its customers.

70. Compass' Pre Payment Announcement led Compass to continue to generate charges, late fees, interest, and other fraudulent reasons to take sums from AS Corp's receivables - destroying AS Corp's cash flow further.

71. Compass' accounting team sent an alleged reconciliation of AS Corp's fuel card account.

72. The reconciliation does not match Compass' online customer portal data, and the customer data misrepresents dates of AS Corp's payments, the CPS Portal

underrepresents the amount of AS Corp's payments, and is missing a number of payments AS Corp made to Compass.

73. After the Pre Payment Announcement, AS Corp prepaid for fuel (Account# 10312) and AS Corp was simultaneously paying off the alleged balance from the previous fuel card balance (Account #10098).

74. In Spring of 2018, Compass demanded $20,000 per week and began taking greater and greater sums from AS Corp's factoring receivables, despite AS Corp experiencing extreme and crippling cash flow problems including falling short of funds for fuel and for paying AS Corp drivers.

75. In Spring of 2018, Compass Funding Solutions also began targeting and directly asking for AS Corp Inc. to factor AS Corp's largest client Risinger through Compass so that all of AS Corp Inc.'s incoming cash flow would flow through Compass, and be subject to Compass' inflated and unlawful deductions, fees, and balances.

76. AS Corp indicated that Risinger did not prefer to work with factoring companies, and Compass personnel indicated they would contact people they knew at Risinger in order to find out why and investigate Risinger's reluctance to factor.

77. In Spring of 2018, Compass continued to demand AS Corp Inc.'s factor through Compass AS Corp Inc.'s largest customer Risinger with Compass.

78. Compass offered to give AS Corp "a break" by requiring AS Corp to pay $30,000.00 a month instead of $15,000 a week (or $60,000.00 a month for allegedly past due fuel balances).

79. Compass' senior personnel had Compass send a Notice of Assignment of AS Corp's invoices to Risinger which instructed Risinger to send all payments for AS Corp's services to Compass directly.

80. By June of 2018 Asentic noticed that Pilot Flying J was not providing fuel rebates for the full amount of AS Corp's fuel usage.

81. In June of 2018, Compass also began taking steps to destroy AS Corp via cutting off AS Corp's fuel, and accused Asentic and/or AS Corp of allegedly "selling fuel" or some other form of blatantly false misconduct involving fuel.

82. In June of 2018, AS Corp Inc. requested one of his best customers to tell Compass that cutting of AS Corp Inc.'s fuel would be counterproductive as AS Corp Inc. was doing more work for him and that AS Corp Inc. was using more drivers to meet AS Corp's customer's needs.

83. In late June of 2018, one of AS Corp Inc.'s best customers stated that Compass' decisions to cut off AS Corp Inc.'s fuel would stop their ability to work with AS Corp Inc. and AS Corp Inc.'s customer questioned whether Compass was, "[t]rying to shut [AS Corp Inc.] down."

84. In July, 2018, Asentic and AS Corp allocated a majority of AS Corp funds to Compass for an alleged fuel card balance.

85. In August, 2018 due to Compass' fraud and mismanagement of AS Corp's fuel card, AS Corp's trucks were waiting to fuel and perform truck repairs after Compass virtually cut-off fuel card services.

86. By September, 2018, AS Corp had lost its major customers, including Risinger and Central Transport due to Compass' fraud, mismanagement, and mishandling of AS Corp's accounts.

87. By October, 2018 Compass had virtually destroyed AS Corp, AS Corp cash flow was destroyed and trucks were left without fuel, and unable to complete hauls to end customers for invoiced jobs.

88. Asentic pleaded with Compass' Vlad Kostic that Compass' actions were destroying AS Corp and that Asentic needed the funds he was owed in order to send funds to his parents overseas.

89. Kostic insulted Asentic and cursed his parents need for Asentic to send them funds.

90. As of the date of this filing, Asentic's father is now deceased.

91. Asentic also pleaded with Dobrasinovic that AS Corp's charges and accounting were mishandled for fuel and other services to no avail.

92. On or around October 22, 2018, Compass insurance personnel referred to AS Corp Inc. as a "new piece of business" for motor carrier insurance despite AS Corp Inc. being a shareholder of Compass Specialty Insurance RRG.

93. After in late October of 2018, Compass insurance personnel informed Asentic and AS Corp Inc. that his business was denied motor carrier insurance coverage from Compass Specialty Insurance RRG.

94. On or around October 22, 2018, AS Corp contacted counsel, and counsel contacted Compass counsel and informed her that the Illinois code requires

notice of insurance nonrenewal to be mailed to a client 60 days before

nonrenewal and that Compass was required by law to retain proof of mailing

nonrenewal to the clients.

95. Compass counsel Arleesia McDonald responded and represented AS Corp had

failed to provide CSI RRG with necessary loss history (loss run) information

requested by Compass in August of 2018, however, AS Corp had provided that

information a year earlier, and had used Compass for motor carrier insurance

ever since the loss run information had already been provided.

96. Compass counsel Arleesia McDonald also represented that AS Corp owed

Compass Funding Solutions in excess of $107,000.00 and owed Compass

Payment Services allegedly in excess of $157,000.00.

97. Compass counsel Arleesia McDonald claimed AS Corp's previous policy had

expired on October 20, 2018, and that Compass had decided to offer a new

proposal and that AS Corp failed to comply with Compass' requests for

information leading to a non-renewal decision by October 22, 2018.

98. By the end of October 2018, uncertainty involving AS Corp's insurance, fuel, and

operations forced AS Corp to cease its own independent motor carrier operations.

99. Despite contesting the validity of many of Compass' charges and negative credit

reports, including to Thomas Milowski, Compass had destroyed AS Corp and

Emilijan Asentic's credit, and therefore the plaintiffs ability to find outside

financing.

100. On November 5, 2018, Compass' counsel Defendant McDonald sent AS Corp a document titled "CPS Outstanding Balance Spreadsheet Balance 10.31.18.xlsx" which states on its summary that AS Corp paid $5,803,301.68 for fuel in total of Accounts 10098 and 10312.

101. According to that document, Compass Funding Solutions headed by Vlad Kostik took $2,022,901.04 for alleged amounts owed on fuel card, as well.

102. Compass' counsel also represented that CFS took $84,295.20 for "Interest Collections" and claimed the interest amounts were not applied towards purported fuel balances.

103. The spreadsheet claims AS Corp owed $51,084.48 on Account 10098, and $87,322.08 on Account 10312 for a total of $138,406.56.

104. Compass also sent AS Corp documents titled "AS Corp. - CFS Aging Report 11.5.18.pdf" representing AS Corp was liable to Compass Funding Solutions for amounts in excess of $100,000.00 for payments not yet made by AS Corp's factored clients.

105. None of the documents demonstrate how the PPSL transaction was segregated or separately accounted for as stated in the PPSL document itself.

106. On November 7, 2018, AS Corp checked the FMCSA website and saw that Compass had represented to the FMCSA an alleged date of cancellation of AS Corp's coverage as of December 5, 2018.

107. On November 7, 2018, AS Corp pointed out that based on a cursory review, Compass' accountings missed AS Corp payments made to Compass, including

but not limited to significants sums for $25,934.64 and $50,000.00 payments made on AS Corp's fuel account, and that any CFS sums not yet collected would be owed by AS Corp's factored customers - not AS Corp.

108. Compass' counsel Defendant McDonald stated in an e-mail on November 7, 2019:

> Counsel:
>
> See the attached detail accounting for the payments that you mentioned. They have been accounted for.
>
> CFS purchases invoices for a fee from its carrier customers like AS Corp so that they do not have to wait 30-90 days for payment. The carrier's interest in those invoices are then assigned to CFS for payment. When the brokers/shippers pay the invoices in 30-90 days, they pay Compass, as assignee. If the brokers do not pay the invoices that CFS purchased, then those invoices are charged back to the carrier customer's account and the carrier customer will be responsible for making sure that they are paid. – Does that answer your question?

109. Compass' counsel Defendant McDonald then added the payments identified as missing by AS Corp into their Quickbooks software and generated a document titled "AS CORP- QB Detail on 10098.xlsx" and sent such documents to AS Corp Inc.'s counsel.

110. The new report includes newly entered and highlighted entries for the missing payments - listing them as "Undeposited funds."

111. According to certain Compass' representations, Compass claimed to offer factoring on a recourse basis with purported rights to collect from a truck company client, such as AS Corp, but only if a truck company's freight customers for a factored account did not pay ninety (90) days from invoice.

112. At the time of the communications between AS Corp Inc.'s counsel and Compass' counsel Defendant McDonald none of the AS Corp factored customers had invoices more than 90 days old yet Compass claimed AS Corp Inc. owed Compass more than $107,000.00 based on unpaid invoices from AS Corp Inc.'s customers.

113. On November 7, 2018, AS Corp requested paperwork from Compass to show AS Corp had a recourse factoring account with Compass in the first place.

114. AS Corp also requested clarification on the CPS Outstanding Balance 10.31.18, QB Detail on 10098, and CFS Aging Report 11.5.18 documents including principal payment amounts, the amount of interest charged, the amount of interest paid, the dates and amounts of any interest charges, the dates of any "loans" or their payoff, factoring deductions towards any "loans," non-factoring payments, and all other accounting paperwork.

115. The parties continued extensive written and telephone communications including additional requests for accountings with all necessary information, and certain additional but still incomplete information was provided. Compass represented that Compass Funding Solutions deducted $1,701,013.19 and applied it towards Account#6005 CPS FUEL ACCOUNT. Compass also represented that Compass Funding Solutions deducted $321,887.85 and applied it towards Account#6006 CPS PAST DUE BALANCE.

116. None of the accounts and documentation lists the principal balances or balances as payments were applied or how interest was calculated or how

Compass Funding Solutions Account Numbers #6005 and #6006 reconcile or relate to Compass Payment Services Account #10098 (pre January of 2018 fuel card) and Compass Payment Services Account #10312 (post January of 2018 Pre Payment Account) before and after May of 2017, before and after September of 2017 (the time of Compass' representation of payoff of the PPSL balance), or before or after January of 2018 (before and after the Pre Payment Announcement).

117.    On November 21, 2018, Compass sent via U.S. mail a demand for alleged fees on a Compass Equipment Finance loan with account number 7730.  According to the letter, the accounts beginning balance was $30,970.00 and interest rate was 19.99% and the last payment received was November 8, 2017.

118.    Later AS Corp also asked for insurance policy paperwork and a copy of policy CAL201734, and all effective dates, dispositions, and replacements as noted on the FMCSA website.

119.    On December 12, 2018, AS Corp received a letter dated December 6, 2018 seeking $4,392.92 in late fees/NSF fees for Compass Equipment Finance loan#7772.

120.    Afterwards AS Corp sought accountings for every AS Corp account with Compass, with all account numbers, account opening and closing dates, penalties, interest, payment dates, payment due dates, principal and account balances, interest, and all other relevant details.

121.   AS Corp also requested accountings from a CPA or bookkeeper rather than auto or semi auto generated statements and reports from non-accountants.

122.   On December 13, 2018, Compass provided an alleged payment history for the Compass Equipment Finance loan with account number 7730, which alleged an outstanding balance of $3,989.53 in late fees.

123.   Compass accused AS Corp of being "less than forthcoming" and "less than truthful" about insurance and Compass Equipment Finance.

124.   Compass stated that it sends out monthly statements to the last known address when there is an outstanding balance on an account.

125.   AS Corp responded that all information requested for insurance had already been provided.

126.   AS Corp had already provided its loss runs, risk manager information, IFTA information, updated carrier loss information, safety plans, driver and units (through ITA submissions, CSI RRG reporting, and other submissions to Compass entities).

127.   The parties continued communications about AS Corp's accounts, including the late charges assessed by Compass Equipment Finance, AS Corp's insurance coverage, and other related issues.

128.   On March 25, 2019, AS Corp needed to register trucks acquired with funds from Compass Equipment Finance.

129.   In order to register the trucks, AS Corp required copies of its titles from Compass, and needed such titles before Friday, March 29, 2019.

130.    Originally, Compass refused to provide any titles.

131.    Eventually, on March 28, 2019, Compass provided copies of two titles out of the five titles in Compass' possession, and demanded payment of $7,981.53 for alleged late fees on the Compass Equipment Finance accounts in order for Compass to provide copies or return the titles for the trucks back to AS Corp.

132.    Approximately one month later, on May 16, 2019, after communications between the parties pertaining to AS Corp's titles had cooled, Compass' counsel Defendant McDonald bypassed AS Corp's counsel, and directly sent AS Corp's President Emilijan Asentic a letter threatening to file suit for around $85,000.00 against AS Corp for unspecified amounts due to AS Corp's alleged refusal to directly communicate with Compass or Compass' counsel, and with the additional threat that the $85,000 sum would change if Compass filed suit.

133.    AS Corp counsel was unaware of Compass' demand letter.

134.    However, only one day after Compass sent the demand letter on May 16, 2019, coincidentally, on May 17, 2019, AS Corp counsel via e-mail requested a copy of AS Corp's insurance policies from Compass' counsel.

135.    In that e-mail correspondence with Compass counsel Defendant McDonald, AS Corp counsel explained that the insurance policies were needed in order to submit insurance claims for a no fault Michigan accident being adjusted by Auto-Owners Insurance representative Alisha Deanda.

136.    Compass' counsel Defendant McDonald responded that a copy of the old policies allegedly previously emailed to AS Corp would be requested.

26

137.   Compass' counsel Defendant McDonald then also inquired into whether the nature of AS Corp's inquiry was for an accident which wasn't AS Corp's fault, or whether AS Corp was attempting to report a claim.

138.   Compass' counsel Defendant McDonald also requested a date of loss and copy of police report from AS Corp counsel, and stated "if there was coverage, [Compass] can start the claims process."

139.   On the very same day, May 17, 2019, AS Corp counsel submitted the claim to Compass counsel with a copy of the police report.

140.   Compass' counsel Defendant McDonald never mentioned the demand letter mailed to Asentic on May 16, 2019 in Compass counsel's communications with AS Corp counsel just one day later on May 17, 2019.

141.   AS Corp then requested all paperwork on file with Compass and requested meaningful accountings as had been requested on many occasions.

142.   On June 13, 2019, Compass stated that AS Corp allegedly owed Compass Payment Services $87,551.39, Compass Equipment Finance $7,982.45, and Compass Specialty Insurance RRG $3,150.00.  Compass sent additional reports titled "CPS - AS Corp. - Outstanding Obligations Binder - zip.pdf," "CEF - AS Corp. Outstanding Obligations Binder 6.12.19.pdf," and "CSI-RRG - AS Corp. Statement 10.2018.pdf."

143.   Compass refused to provide any meaningful accounting.

144.   Later that same day, Compass revised the e-mail and claimed AS Corp's alleged obligation to CSI RRG was only $3,105.35.

145.   On June 25, 2019, AS Corp requested amortization schedules for fuel card, and all AS Corp login and passwords for every AS Corp account with Compass.

146.   Compass indicated it did not have an amortization schedule and represented no passwords were in Compass' possession but that a reset was possible.

147.   The parties continued correspondence in August of 2019 regarding two claims made involving AS Corp as an insured under Compass Speciality Insurance RRG.

148.   AS Corp also requested copies of the AS Corp-Compass Factoring and Security Agreement and CAL201734 Insurance Policy and an updated on the Leatherman insurance claim submitted to Compass.

149.   On September 3, 2019, an attorney on behalf of Auto-Owners Insurance in the Leatherman claim indicated Auto-Owners would pay damages up to $1,000 for "damages not covered by insurance," as Michigan was a no fault state. Compass' counsel was copied on such correspondence.

150.   Compass has not provided any additional information regarding the Leatherman claim, any meaningful or accurate accountings, or access to every AS Corp online account.

151.   AS Corp Inc. to date cannot access all of its online accounts for all of the Compass services offerings to AS Corp Inc. and Asentic let alone access them 24/7, in full, and in real time.

152.   On December 16, 2019 Plaintiffs in their individual capacities and not in a class capacity or derivatively on behalf of shareholders of the RRG, filed a

Verified Complaint and sought ex parte TRO in a case captioned Asentic et. al. v. Dobrasinovic et. al., 2019 CH 14458 in the Circuit Court of Cook County.

153.   At present the Cook County Chancery court litigation is on-going and in the midst of interlocutory appeal, and no final judgment has been entered in that case.

154.   On May 12, 2020, Compass counsel Arleesia McDonald informed AS Corp Inc. that AS Corp Inc. had been named as a Defendant in a suit involving an accident in Columbia County, GA.

155.   Compass counsel Arleesia McDonald requested AS Corp Inc. and Asentic's contact information so that Compass Specialty Insurance could, "discuss the claim with Mr. Asentic," and she requested his current address, telephone number, and email addresses.

156.   In May of 2020, counsel Arleesia McDonald again indicated that a party had now filed suit, and that Compass "third party claims department needs the current contact information for Mr. Asentic so that they can discuss the case with him . . . ."

157.   McDonald also requested Asentic's contact information again.

158.   McDonald also requested to know if counsel for AS Corp Inc. would be the contact person for the Georgia litigation.

159.   McDonald also stated that if Mr. Asentic did not wish to assist to Compass in the defense of the case, that [was] fine too, and that she just needed to know so she would know how to proceed with the Georgia litigation.

160.    Upon information and belief, the Moorer suit in Georgia filed against AS
Corp Inc. and others was filed in Spring of 2020.

161.    Since the litigation in the Circuit Court of Cook County began and the
original suit was filed in this case, Compass continuously emails and has called
Mr. Asentic with Compass marketing and promotion materials despite requests
for such emails and communications to stop.

162.    In March of 2021, AS Corp Inc.'s counsel communicated with Ms. Jill Felkins
after receiving a call from her about her potential representation of Citadel
entities in this federal litigation, communicated with Mr. John Lamb, and Jill
Collett of American Millennium Insurance Company and Citadel Risk
Management Inc. about the Moorer suit in Georgia and AS Corp Inc.'s insurance
coverage and claims against the Citadel defendants and Compass and others in
this and other litigation.

163.    In March 17, 2021 Ms. Collett indicated the Moorer suit was filed on May 12,
2020 in Georgia and that AS Corp Inc. and its counsel's alleged failure to contact
defense counsel assigned by the Citadel Defendants Melissa Bailey of Copeland,
Stair, Kingma & Lovell would lead to potentially declining coverage to AS Corp
Inc.

164.    In May of 2021 AS Corp Inc.'s counsel received a call from Corely R. Mendell
of Copeland, Stair, Kingma & Lovell and AS Corp Inc.'s counsel sent Ms.
Mendell an email explaining that AS Corp Inc. and Compass and Citadel are in

litigation and that the Copeland firm should inform the Georgia court of this fact and use that information to seek a stay of that litigation.

165.   The Copeland firm has been making attempts to get in touch with AS Corp Inc.'s worker Dragana.

166.   In May of 2021, after AS Corp Inc.'s counsel spoke with both Ms. Mendell and Ms. Bailey, Ms. Bailey explained that AS Corp Inc. was in a "default position" and that AS Corp Inc. failed to inform the Copeland firm about whether they had been properly served, and stated that, "[N]o Georgia court is going to agree to stay a case simply because my client won't speak to me" despite her ability to speak and past conversation with AS Corp Inc.'s counsel.

167.   In May of 2021, Ms. Bailey demanded information from Dragana about whether services was made and she indicated she was aware that AS Corp Inc. was in litigation with Compass and Citadel.

168.   In May of 2021, AS Corp Inc. counsel informed Ms. Bailey and Ms. Mendell that there were several errors in their correspondence, and requested a copy of the default judgment, motion for default judgment filed by the plaintiff, case number, plaintiff attorney name, the Judge's name, docket print out, and all other information regarding the Moorer Georgia litigation.

169.   In May of 2021, Ms. Bailey provided AS Corp Inc. and Dragana four documents: (1) the Moorer Complaint filed on March 7, 2020; (2) Notice of Service upon David De La Cruz through the Georgia Secretary of State; (3) Notice of Service upon AP [*sic*] Corp Inc. through the Georgia Secretary of State;

and (4) a Certificate of Acknowledgement of service of process upon David De La Cruz.

170. The Copeland firm has not provided AS Corp Inc. or its counsel any of the other requested information or any default judgment paperwork whatsoever.

171. To date, Compass has refused to pay AS Corp Inc. for the Leatherman claim which occurred in Michigan despite the accident which took place totaling an AS Corp Inc. truck through no fault of AS Corp Inc. and which accident was admittedly the fault of Ms. Leatherman, and despite Michigan being a no fault state which led Auto Owners insurance to send a never cashed $1,000.00 check for the accident to AS Corp Inc., and for which Compass' entities are responsible for the remaining unpaid damages to AS Corp Inc. including but not limited to AS Corp Inc.'s totaled truck.

172. Any attempt by Asentic or AS Corp Inc. to request to act on behalf of Compass Specialty Insurance RRG to bring a shareholder derivative suit would be futile as the named defendants including but not limited to Radovan "Roy" Dobrasinovic and the Individual Defendants would be responsible for deciding whether such suit could be brought against them.

173. Emilijan Asentic and AS Corp Inc. have been deceived, defrauded, subject to unlawful deductions, unlawful fees, unlawful charges, subject to schemes involving fuel card fraud, subject to schemes involving motor carrier insurance, subject to information extraction about its drivers, subject to information extraction used against Asentic and AS Corp Inc. derived from applications,

subject to information extraction from Defendants business operations, subject to economic extortion which includes but is not limited to the PPSL and Pre Payment Account series of events, subject to being extorted to disclose their confidential and sensitive personal and business information, subject to usurious transactions, subject to unconscionable transactions, subject to breaches of fiduciary duty, subject to fraud in factum and fraud in the inducement, subject to conflicts of interests, subject to lack of proper notice for fundamental account changes including but not limited to motor carrier insurance cancellation and RRG share theft, subject to inability to access all account information, subject to unlawful withholding of truck titles, subject to inaccurate motor carrier insurance coverage representations, subject to bad faith and continuous insurance claims mishandling and conflicts of interest, subject to improper communications which violate attorney ethical standards, subject to harassing communications despite on-going litigation, and subject to contradictory, inaccurate, false, misleading account labeling, misleading account pay off, and misleading account balance representations from 2016 until the present which has been perpetrated by Radovan "Roy" Dobrasinovic and his entities.

174.    Radovan "Roy" Dobrasinovic, Radomir Dobrasinovic, Radojica Dobrasinovic, their friends, family, employees, workers, business associates, including but not limited to Pilot Flying J, the Citadel Defendants, the Individual Defendants, and other owned and affiliated management entities including but not limited to the Compass One Stop Center entities, RD, MGR, Berane, Danny Trans,

Dobrasinovic family companies, and other entities and individuals have and still conspire and/or aid and abet each others deceptive and unlawful schemes, including but not limited to those schemes listed above, both directly and indirectly, through information exchange, joint customer acquisition ventures, interconnected promotion and attendance of events through social, business, professional, and other networking and relationships which has directly, indirectly, and financially injured AS Corp Inc. and Asentic tangibly, intangibly, and which continues to injure AS Corp Inc. and Asentic to this day.

175.    Others in the Eastern European and larger trucking communities have been injured by the named Defendants through this interconnected activities resulting in massive economic losses, which share the common feature that such injured parties either entrusted the name Defendants when forming business relationships with the Defendants based on the Defendants seeking their trust and confidence, the Defendants representations that Defendants would provide honest services, that Defendants would act in good faith, that Defendants would act in the injured parties interests rather than in a manner adverse and hostile to their interest, and based upon Defendants representations that their products and services and labor was lawful and designed to help not hurt the injured parties.

176.    The number of parties injured by Radovan "Roy" Dobrasinovic and his Compass One Stop Center, and the *de facto* Dobrasinovic Brother One Stop Center, the Citadel Defendants, the Captive Planning Associate Defendants, the

Pilot Flying J Defendant, the Individuals Defendants, and their entities and affiliates, is in the hundreds if not thousands, and has caused massive, sustained, and on-going harm to those injured parties in a manner which is reflective, overlapping, consistent, and unfortunately similar to what happened to Emilijan Asentic and AS Corp Inc.

177.    Quite simply, the named Defendants make representations to injured parties which causes them to "lower their guard" and to make injured parties believe the Defendants are acting in their best interest, or at a minimum in a lawful, honest service, and good faith manner to either mutually benefit the parties or benefit the injured parties, which then is followed by the named Defendants taking advantage of the injured parties by gathering intelligence and information about them so that such information can be used to develop schemes which allow the Defendants to use their superior status of wealth, position, and connections to extract money, information, and all other valuable tangible and intangible assets from those they perceive as at a disadvantage or susceptible (whether because of language barriers, inexperience, lack of familiarity with US style legal matters, lack of wealth or resources, or other factors) in a manner which is designed to avoid blatant detection and to avoid engaging in any meaningful challenge or threat to Defendants polluted wealth, connections, and beliefs about their superiority and ability to manipulate the injured parties without consequence.

WHEREFORE, Plaintiffs derivatively on behalf of themselves, and/or shareholders of Compass Specialty Insurance RRG, and/or any future class which is certified seek compensatory damages, consequential damages, statutory damages, compensatory treble damages, attorneys' fees and costs, punitive damages, injunctive relief, declaratory relief, full and complete accounting for all

customer accounts performed by certified accountants, complete access to every online account, names and contact information for all customers, rescission and/or restitution for any unlawful transactions or unconscionable documentation, enjoining unlicensed collections activity, defense of all suits against AS Corp Inc. in a manner which acknowledges any and all conflicts of interests, full claims adjustment and payment of all pending unpaid claims including but not limited to the Leatherman claim, and all other relief deemed equitable and/or just.

Dated: June 21, 2021.

Ankur Shah
SHAH LEGAL REPRESENTATION
333 South Wabash Ave., Suite 2700
Chicago, IL 60604
T: (312) 612 - 9221

Respectfully submitted,

AS CORP INC. and EMILIJAN ASENTIC

/s/ Ankur Shah

_____

## **CERTIFICATE OF SERVICE**

I certify on this 21st day of June, that I served a copy of this First Amended

Complaint upon all registered CM/ECF Users through CM/ECF for the Northern

District of Illinois.

Dated: June 21, 2021

/s/ Ankur Shah

_____

Ankur Shah
*Attorney for the Plaintiffs*